**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **Case No. 4:25-cv-01206-KGB**

**THOMAS RAY KELSO, *et al.*** **DEFENDANTS**

**ORDER**

Before the Court is defendant Thomas Ray Kelso's reply to complaint pursuant to Federal Rule of Civil Procedure 8, which the Court construes as a motion to dismiss the complaint brought under Federal Rule of Civil Procedure 12(b)(6) and a motion for a more definite statement brought under Federal Rule of Civil Procedure 12(e) (Dkt. No. 6). Plaintiff United States of America ("United States") has filed a response in opposition to Kelso's motion (Dkt. No. 11). For the following reasons, the Court denies Kelso's motion to dismiss and motion for a more definite statement (Dkt. No. 6).

**I. Background**

The United States's complaint asserts that for two decades Kelso owned and/or managed an apartment complex in Searcy, Arkansas, where he sexually harassed female tenants (Dkt. No. 1, ¶ 1). In the complaint, the United States contends that Kelso conditioned the basic needs of a person's home—electricity, air conditioning, and laundry access—on female tenants acquiescing to his demands for sex or with his repeated sexual comments and unwanted touching in violation of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601–3619 (the "Fair Housing Act" or "FHA") (Dkt. No. 1, ¶¶ 1, 3, 11–13). The complaint details four examples of Kelso's conduct against specific female tenants, including two examples of female tenants that Kelso sexually harassed in 2023, and the complaint alleges Kelso took these actions against the

female tenants "because of" their sex (*Id.*, ¶¶ 14–18, 24). The United States seeks equitable relief, monetary damages for victims of Kelso's conduct, and civil penalties (*Id.*, at 7–8).

Kelso responds that the complaint fails to demonstrate the alleged behavior is based on gender, that the complaint is barred by the statute of limitations, that the matters have been previously litigated and are thus barred by *res judicata*, and that the complaint fails to state a claim upon which relief can be granted (Dkt. No. 6, at 1).

## II. Motion To Dismiss

### A. Legal Standard

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. *See Farm Credit*, 734 F.3d 800, 804 (8th Cir. 2013); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a

court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) (per curiam). "[D]ocuments necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citing *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti*, 666 F.3d at 1151 (quoting *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).

## B. Analysis

### 1. The Complaint States A Plausible Gender-Based Claim

For his first argument, Kelso contends that the complaint "fails to demonstrate alleged behavior is based on gender." (Dkt. No. 6, at 3). Kelso contends that the "Government cannot point to any provided examples of male tenants level of interaction or treatment by Mr. Kelso. Indeed there is no disparate treatment as Mr. Kelso did not discriminate against any tenants, whether male or female." (Dkt. No. 6, at 5).

Kelso asserts that sex discrimination "must involve 'disparate treatment,'" and that the Court must dismiss the complaint because the United States has not presented evidence that he had "preference or animosity toward one gender over the other" (Dkt. No. 6, at 3, 5). As the United

States points out in its response, comparator evidence is one way of showing intentional discrimination because of a prohibited reason, but it is not the only way (Dkt. No. 11, at 8 (citing *Wadsworth v. Nguyen*, 129 F.4th 38, 72 (1st Cir. 2025)).

Sexual harassment is a form of discrimination because of sex that violates the FHA when it creates a hostile housing environment or it constitutes *quid pro quo* sexual harassment. *See United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012); *Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010). Allegations in the complaint state a plausible claim of discrimination based on sex, including sexual harassment by Kelso that was severe or pervasive and created a hostile environment and also conditioned continued housing and associated benefits on female tenants engaging in sex acts with him (*see* Dkt. No. 1, ¶¶ 1, 8, 12–27). Plaintiffs alleging sexual harassment are not generally required to submit evidence regarding the treatment of similarly situated persons of the opposite sex to support that they were sexually harassed "because of" their sex. *See, e.g., Wadsworth*, 129 F.4th at 54–55; *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1235 (10th Cir. 2025); *Hess v. Garcia*, 72 F.4th 753, 760–61 (7th Cir. 2023).

Kelso points to *Dees v. Bob Evans Farms, Inc.*, Case No. 03-cv-850, 2005 WL 1610656 (S.D. Ill. July 7, 2005), and argues that a defendant can avoid liability in a sexual harassment case by arguing that he or she harassed women and men equally (Dkt. No. 6, at 5). Even assuming Kelso is correct that this legal argument can be made in the Eighth Circuit, at this stage in the lawsuit there are no allegations in the complaint asserting that Kelso sexually harassed men and subjected them to the same treatment to which he subjected women (Dkt. No. 1).

For these reasons, the United States has stated a plausible claim based on sex under the FHA.

### 2. The Complaint States A Plausible 42 U.S.C. § 3614(a) Claim

Kelso argues that the complaint "provides no information upon which anyone could reasonably respond or even prove that the basis for allegations exist, and thus the Complaint fails to state a claim upon which relief can be granted" (Dkt. No. 6, at 13). Kelso acknowledges that the United States has brought this action under 42 U.S.C. § 3614(a) of the FHA, which allows the Attorney General to file suit when there is reasonable cause to believe that: (1) "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by [the FHA]"; or (2) "any group of persons has been denied any of the rights granted by [the FHA] and such denial raises an issue of general public importance." 42 U.S.C. § 3614(a). A cause of action under 42 U.S.C. § 3614(a) is a single claim, not a collection of individual claims. *See. Hurt*, 676 F.3d at 652.

There is no minimum number of incidents or victims required to establish a pattern or practice, and the number of discriminatory incidents need not be great. *See Id.*, at 654 (determining that credible testimony of four victims was sufficient); *see also United States v. City of Parma, Ohio*, 494 F. Supp. 1049, 1095–96 (N.D. Ohio 1980), *aff'd* 661 F.2d 562 (6th Cir. 1981) (determining that pattern and practice existed based on five actions taken by city to prevent racial equality in housing). The United States can also prevail on a § 3614(a) claim by showing that Kelso's actions denied rights to a group of persons. *See City of Parma, Ohio*, 494 F. Supp. at 1095 ("To demonstrate that a group of persons has been denied specific rights granted by the Act the government must show that the discriminatory conduct affects more than a single individual. Even an isolated act of discrimination against a group of persons is sufficient to support relief.") (citing *United States v. Hunter*, 459 F.2d 205 (4th Cir. 1972), *cert. denied*, 409 U.S. 934 (1972)).

Here, the United States alleges that Kelso engaged in five different types of behavior constituting sexual harassment, including offering to grant tangible housing benefits to female tenants, such as not charging rent, in exchange for engaging in sexual acts with him; refusing to grant tangible housing benefits by cutting electricity, air conditioning, or denying laundry access to female tenants; subjecting female tenants to unwelcome sexual touching, including on or between their legs; making unwelcome comments about female tenants' bodies; and taking adverse housing actions, such as initiating eviction actions or refusing to make repairs, against female tenants who would not engage in sexual acts with him (Dkt. No. 1, ¶¶ 14–20). The complaint also asserts multiple incidents of harassment against a group of four different female tenants (*Id.*, ¶¶ 15–18). The different actions alleged to have been taken by Kelso against multiple tenants states a plausible claim under § 3614(a).

Kelso complains that the United States does not provide specific dates of the harassment and names of the four women who were alleged victims of harassment, other than by using general terms (Dkt. No. 11, at 12), but the Court determines that the details in the United States' complaint are sufficient to describe a pattern or practice of harassment under § 3614(a). *See United States v. Webb*, Case No. 4:16-cv-1400, 2017 WL 633846, *2–4 (E.D. Mo. Feb. 16, 2017) (determining that general description of defendants' pattern or practice of harassment of one woman over a single four-year period was sufficient because it adequately advised defendants of the nature of the claims against them); *United States v. Pfeiffer*, Case No. 20-cv-1974, 2021 WL 2529948, at *4–5 (D. Minn. June 21, 2021) (determining that the United States plausibly alleged facts establishing pattern and practice of discrimination based on allegations of a number of incidents of sexual harassment arising from the experiences of three individual female tenants).

The United States has stated a plausible claim under § 3614(a) of the FHA by stating a short and plain statement that advises defendants of the nature of the claims against them and provides examples of Kelso's alleged conduct.

**3. Kelso's Criminal Conviction As A Bar To Civil Action**

Kelso argues that the United States's FHA claims are barred by *res judicata* because they arise out of the same nucleus of operative facts as his prior criminal prosecution (Dkt. No. 6, at 6–10).

> Under federal common law, the doctrine of *res judicata*, or claim preclusion, applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, (1980).

*Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018).

Here, even if Kelso could establish the first three elements of *res judicata*, Kelso cannot establish the fourth element. Kelso was criminally prosecuted on three counts of sex trafficking by force, fraud, or coercion and one count of possession with intent to distribute methamphetamine. Kelso's criminal convictions are not based on the same causes of action as his sexual harassment of female tenants in violation of the FHA between April 2021 and April 2024.

For purposes of *res judicata*, a criminal prosecution and a civil claim, even if based on the same conduct, are distinct causes of action. *See, e.g., Morse v. Comm'r of I.R.S.*, 419 F.3d 829, 834 (8th Cir. 2005) (determining that *res judicata* was inapplicable because "the government does not surrender its right to seek civil fraud penalties by undertaking a criminal tax prosecution");

*United States v. Lundahl*, Case No. 19-cr-50156-LRR, 2021 WL 962983, at *3 (D.S.D. Mar. 15, 2021) (finding *res judicata* inapplicable between civil social security proceeding and criminal proceedings that involve a different cause of action).

Further, the criminal monetary penalties in the form of restitution imposed by the court for Kelso's criminal conduct between 2021 and 2023 do not have any preclusive effect on the United States's claim for monetary damages in this civil case. As Kelso appears to acknowledge in his motion, the $50,000.00 assessment imposed by the criminal court under the Justice for Victims of Trafficking Act of 2015 is a restitution Order made under 18 U.S.C. §§ 3663 and 3664A. Criminal restitution, even when paid to an individual, "is not intended to compensate a victim for damages it may otherwise be entitled to in a civil proceeding." *United States v. Frazier*, 651 F.3d 899, 911 (8th Cir. 2011) (citing *United States v. Chalupnik,* 514 F.3d 748, 754 (8th Cir.2008)). Rather, restitution is a penalty for a criminal offense that is "predicated on a criminal conviction . . . [and] ordered at sentencing." *See Ellingburg v. United States*, 607 U.S. 163, 168 (2026). In contrast, in this civil action the United States seeks "monetary damages [for] each person aggrieved by the Defendants' discriminatory conduct" and civil penalties "to vindicate the public interest." (Dkt. No. 1, at 7–8). The United States seeks the requested relief based on different conduct and different statutory violations for conduct that occurred over a broader period of time than the criminal conduct at issue in Kelso's criminal case (Dkt. No. 1).

Finally, Kelso argues that the United States should have brought the FHA claim as part of its criminal case (Dkt. No. 6, at 6), but the FHA claim is a civil claim that could not have been brought as part of a criminal prosecution. *See United States v. Brazile Brazile*, Case No. 4:18-cv-00056, 2020 WL 5534452, at *11 (E.D. Mo. Sept 15, 2020) (determining there is no *res judicata*

bar on the government's civil claim for fraudulent transfer because it could not have been brought as part of the government's criminal proceedings).

Because Kelso cannot establish that the United States's civil and criminal claims are based on the same claims or causes of action, the United States's civil FHA claims are not barred by *res judicata*.

**4. The United States's Claims Are Not Time Barred**

Kelso argues that the statute of limitations bars the United States's claims (Dkt. No. 6, at 11). Kelso cites to 42 U.S.C. § 3614(b). The statute provides:

> (b) On referral of discriminatory housing practice or conciliation agreement for enforcement
>
> (1)(A) The Attorney General may commence a civil action in any appropriate United States district court for appropriate relief with respect to a discriminatory housing practice referred to the Attorney General by the Secretary under section 3610(g) of this title.
>
> (B) A civil action under this paragraph may be commenced not later than the expiration of 18 months after the date of the occurrence or the termination of the alleged discriminatory housing practice.

42 U.S.C.A. § 3614.

Kelso contends that any alleged "pattern or practice" of discrimination ended when he was indicted in August 2023 and that the 18-month limitation period lapsed in August 2025 (Dkt. No. 6, at 11). By Kelso's calculation, the civil complaint in this case was filed nine months after the statute of limitations expired, and no continuing violation occurred within the limitations period (*Id*., at 11–12).

Kelso's argument that the United States's claims are barred by the statute of limitations fails because he relies on the wrong statutory provision. As set forth above, § 3614(b) applies to lawsuits brought by the Attorney General after a referral from the United States Department of

Housing and Urban Development ("HUD") referring a complaint that "involves the legality of any State or local zoning or other land use law or ordinance . . . " to the United States. *See* 42 U.S.C. § 3610(g)(2)(C); *see also* 42 U.S.C. § 3614(b)(1)(B). This case was not brought pursuant to § 3614(b) (Dkt. No. 1, ¶ 4).

In *Garcia v. Brockway*, the United States Court of Appeals for the Ninth Circuit explained the different FHA enforcement mechanisms and applicable statutes of limitations as follows:

> The statute provides three enforcement mechanisms. First, an administrative complaint may be initiated with HUD, *see id.* §§ 3610–3612, and remedies include actual damages to the aggrieved person, civil penalties and injunctive relief. *See* 24 C.F.R. § 180.670(b)(3). An aggrieved person—i.e., any person who "claims to have been injured by a discriminatory housing practice," 42 U.S.C. § 3602(i)(1)—must file the complaint "not later than one year after an alleged discriminatory housing practice has occurred or terminated." *Id.* § 3610(a)(1)(A)(i). HUD may also file a complaint sua sponte; it's unclear whether HUD is subject to the same limitations period. *See id.*
>
> Second, the Attorney General may bring a civil action if a defendant has "engaged in a pattern or practice of resistance" to FHA rights, or if a "group of persons has been denied any [FHA] rights . . . and such denial raises an issue of general public importance." *Id.* § 3614(a). The FHA does not provide a statute of limitations for these actions, and other courts have held that such actions seeking equitable relief are not subject to any time limit. *See, e.g., United States v. Inc. Vill. of Island Park,* 791 F. Supp. 354, 364–68 (E.D.N.Y. 1992); *United States v. City of Parma,* 494 F. Supp. 1049, 1094 n. 63 (N.D. Ohio 1980). Actions seeking damages are subject to the general three-year statute of limitations, *see* 28 U.S.C. § 2415(b), and those for civil penalties must be "commenced within five years from the date when the claim first accrued." *Id.* § 2462.

*Garcia v. Brockway*, 526 F.3d 456, 460–61 (9th Cir. 2008).

As set forth in *Garcia*, the Court must assess the limitations period for a case brought pursuant to § 3614(a) by looking at the forms of relief requested. There is no statute of limitations governing the United States's claims for declaratory and injunctive relief under § 3614(a). *See, e.g., Garcia*, 526 F.3d at 460; *United States v. Petties*, *et al*., Case No. CIV-24-00036, 2025 WL 749626, *6 (W.D. Okla. Mar. 7, 2025) ("FHA does not contain a statute of limitations for claims for declaratory and injunctive relief under § 3614(a)"); *United States v. Tanski,* Case No. 1:04-cv-

714, 2007 WL 1017020, *6 (N.D.N.Y. Mar. 30, 2007) ("Neither the Fair Housing Act nor any other federal law imposes a statute of limitations on actions for injunctive relief brought by the United States under section 3614(a); as a result, such actions are not subject to any statute of limitations."); *United States v. Harrison*, 188 F. Supp. 2d 77, 80 (D. Mass. 2002) ("[S]uits for injunctive or declaratory relief brought by the United States pursuant to [Section 3614(a)] are not subject to any statute of limitations.") (citation omitted).

The United States's claim for damages is subject to a three-year statute of limitations, which begins to run when material facts of the claim are known to the United States. *See* 28 U.S.C. § 2415(b) ("Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues"); 28 U.S.C. § 2416(c) ("For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which . . . (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances[.]").

Courts have applied the three-year statute of limitations to the United States's claims for monetary damages for aggrieved persons under § 3614(a) of the FHA. *See United States v. Marsten Apts., Inc.*, 175 F.R.D. 257, 263 (E.D. Mich. 1997) ("the government's [FHA] claims are in the nature of a tort claim, and thus the three year limitations period of § 2415(b) applies."); *Harrison*, 188 F. Supp. 2d at 81 (applying the statute of limitations of 28 U.S.C. § 2415 to the United States' FHA claim for money damages); *Petties*, 2025 WL 749626 at *6 ("The statute of limitations for a claim for monetary damages under § 3614(a) is three years from the time the cause of action accrued. The cause of action accrues when the Attorney General could have first

reasonably known of the material facts underlying the claim.") (internal citations omitted); *Tanski*, 2007 WL 1017020, at *8 (same).

The court in *Tanski* reasoned that cases brought under the Attorney General's authority "differ fundamentally" from private FHA lawsuits. 2007 WL 1017020, at *9. The court stated:

> A section 3614(a) claim requires reasonable cause to believe that a defendant has engaged in a pattern or practice of discrimination . . . and permits the Attorney General to assess a civil penalty to "vindicate the public interest." . . . As such, it is fully consistent with the statutory scheme of the Fair Housing Act to allow the Attorney General to recover compensatory damages on behalf of a victim of such conduct, even where the victim is time-barred from recovering compensatory damages based solely on his or her individual complaint.

*Id*.

Kelso argues that his alleged pattern or practice of sexual harassment ended in April 2023, when he was arrested, and that the United States had reasonable cause to believe he was violating the Act by August 2023, when he was indicted (Dkt. No. 4, at 11). Assuming for purpose of this Order that these facts are correct, the United States's complaint, which was filed on November 18, 2025, was filed within three years of Kelso's arrest and his indictment, and the United States's claim for monetary damages is timely.

The United States's claim for civil penalties is also timely. Actions for civil penalties are subject to a five-year statute of limitations from the date the cause of action accrues. 28 U.S.C. § 2462. Under the relevant case law, the United States's claim for civil penalties is timely so long as the pattern or practice continued into the limitations period. *Harrison*, 188 F. Supp. 2d at 80 (determining that for purposes of civil penalties, "[e]ven if an unlawful pattern and practice commenced more than five years before the filing of the complaint, it is timely if such practice continues into the limitations period."); *United States v. J. Randolph Parry Architects, P.C.*, 608 F. Supp. 3d 203, 206-07 (E.D. Pa. 2022) (holding that a pattern or practice is a single claim, not a

series of independent claims, and so long as the final instance is within the statute of limitations, the entire claim is timely filed for purposes of civil penalties)).

The complaint alleges a pattern or practice of FHA violations that began in approximately 2001 and continued through 2023. This action was filed two and a half years later. Thus the United States's claim for civil penalties is not barred by the five-year statute of limitations.

### III. Motion For A More Definite Statement

Kelso asks the Court to order a more definite statement under Federal Rule of Civil Procedure 12(e) because Kelso contends that there is a lack of detail in "identifying the person/persons making the allegations against him as well as the lack of definitive timeline." (Dkt. No. 6, at 2). Kelso objects to language like "in or around 2011" and "a female tenant" asserting that it is not specific enough (Dkt. No. 6, at 2–3). Kelso contends that the United States should provide a name and unit number of the apartment for the tenants providing information in paragraphs 15–18 of the complaint so that he may respond (*Id.*, at 3).

Federal Rule of Civil Procedure 12(e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." For the reasons set forth in this Order, the Court finds that the complaint in this case is sufficient to state a plausible claim for relief under § 3614(a) of the FHA and that the allegations in the complaint are sufficient enough for Kelso reasonably to prepare a response. Accordingly, the Court denies Kelso's motion for a more definite statement.

### IV. Conclusion

For the foregoing reasons, the Court denies Kelso's motion to dismiss and motion for a more definite statement (Dkt. No. 6).

It is so ordered this the 31st day of August, 2026.

Kristine G. Baker
Chief United States District Judge